344-08/PJG/PLS
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Pamela L. Schultz (PS 8675)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

MUR SHIPPING BV, AMSTERDAM,

                                        Plaintiff,

- against -

CHORUS SHIPPING CO., LTD.,

                                        Defendant.
--------------------------------------------------------------------x

**VERIFIED COMPLAINT**

Plaintiff MUR SHIPPING BV, AMSTERDAM ("MUR"), as and for its Verified

Complaint against CHORUS SHIPPING CO., LTD. ("CHORUS") alleges upon information and

belief as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract.

The case also falls within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C.

§1333. Federal jurisdiction also exists because the action arises under the New York Convention

on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or

the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.     At all times relevant hereto, Plaintiff MUR was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Atrium Building, Strawinskylaan, 3011, NL 10077 ZX, Amsterdam, The Netherlands.

3.     At all times relevant hereto, Defendant CHORUS was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at Room 1906, 19th floor, Janggyon/Dong, Jung-KU, Seoul, Korea.

4.     On or about February 27, 2008, Plaintiff MUR, as owner, and Defendant CHORUS, as charterer, entered into a maritime contract of charter party for the carriage of any lawful cargo from Shanghai, China to Luanda, Angola onboard the M/V SEA BREEZE.  A true and correct copy of the charter party is attached as Exhibit A.

5.     Plaintiff MUR duly tendered the vessel into service under the charter, the voyage is being performed.

6.     Under the terms of the charter, Defendant CHORUS was afforded a certain period of laytime for the discharge of the cargo, after which demurrage at the rate of $20,500 per day would be incurred.

7.     The vessel arrived at the first discharge port of Luanda on May 20, 2008 at 1445 hours and tendered her Notice of Readiness, triggering the commencement of laytime at 0600 hours the following day May 21, 2008.

8.     The allowed laytime expired at 0200 hours on May 30, 2008 and the vessel has been on demurrage since then.

9.     The vessel is presently still discharging cargo at Luanda and not expected to complete that discharge until tomorrow.

10.    Thereafter, the vessel will transit to the next discharge port of Soyo where the balance of the cargo will be discharged.

11.    The most recent demurrage calculation, through June 25, 2008 yields a demurrage balance due of $533,000.  (See Exhibit B).

12.    To the extent the vessel completes discharge tomorrow as expected, and transits to Soyo (where no delay in berthing is anticipated), an estimated four additional days of discharge will be required in order to complete the removal of the cargo.

13.    Excluding from the above referenced calculation (i.e. the $533,000 figure) the anticipated transit time from the first to the second discharge port, and calculating demurrage from the tender of the vessel's Notice of Readiness at Soyo (demurrage to count at Soyo on tendering) through the anticipated time for the completion of discharge, an additional period of demurrage in the sum of $61,500 will be incurred before the completion of the voyage.

14.    Based upon the foregoing, Plaintiff MUR calculates, as nearly as can be estimated, that total demurrage on the subject voyage will amount to $594,500 - of which $510,655 is presently due and owing for demurrage incurred through the date of filing (demurrage due under charter day-by-day) with an additional amount of demurrage to be incurred during the completion of discharge at the second discharge port of Soyo in the sum of $83,845.

15.    Notwithstanding CHORUS' obligation to pay demurrage under the terms of the charter party, none of the demurrage charges have been paid, and as outlined above, demurrage continues to accrue on a daily basis.

16.    Plaintiff MUR has fulfilled all obligations required of it under the charter party.

17.    The charter party provides that it is to be governed by English law and all disputes between the parties are to be resolved by arbitration in London, and the right to have the merits of the dispute determined in London arbitration is reserved.

18.    Plaintiff MUR has commenced and/or soon will commence arbitration in London.

19.    Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable.

20.    Pursuant to the New York Convention and Supplemental Admiralty Rule B, MUR is entitled to security.

21.    This action is brought to obtain security in favor of Plaintiff MUR in respect to its claims against Defendant CHORUS under the charter party.

22.    This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in arbitration proceedings and interest, all of which are recoverable under the law of the forum.

23.    Plaintiff MUR estimates that its anticipated attorney fees and costs to arbitrate this matter will total USD $175,000 and that interest at the rate of 8% for a period of 2.5 years (the estimated time of completion of arbitration) will total USD $118,900.

24.    Plaintiff MUR estimates, as nearly as can be computed, the total amount of its claim which is sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Plaintiff MUR against Defendant totals **USD $888,400.**

25.    Upon information and belief, and after investigation, the Defendant identified in this action cannot be "found" within this district for the purpose of Rule B of the Supplemental

Rules of Certain Admiralty and Maritime Claims, but Plaintiffs are informed that Defendant has, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (hereinafter, "ASSETS"), including but not limited to ASSETS in its name, or as may be held, received or transferred for its benefit, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

WHEREFORE, Plaintiff MUR prays:

a.    That process in due form of law according to the practice of this Court issue against Defendant citing it to appear and answer the foregoing;

b.    That since Defendant cannot be found within this District pursuant to Supplemental Rule B, that all assets of Defendant up to and including the sum of **$888,400** may be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant including but not limited to such assets as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit, at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c.    That an Order be entered directing Defendant to proceed to arbitration for the adjudication of the merits of the claim;

d.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary in order to give effect to and enforce any arbitration award that may be rendered; and

e.    That Plaintiff have such other, further and different relief as this Court may deem just and proper in the premises.

Dated:    New York, New York
          June 23, 2007

                        FREEHILL HOGAN & MAHAR, LLP
                        Attorneys for Plaintiff

                        By: _____
                              Peter J. Gutowski (PG 2200)
                              Pamela L. Schultz (PS 8675)
                              80 Pine Street
                              New York, NY 10005
                              (212) 425-1900
                              (212) 425-1901 fax

## ATTORNEY VERIFICATION

STATE OF NEW YORK   )
                           ) ss.:
COUNTY OF NEW YORK  )

      PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

      1.     I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.     The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

      3.     The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                               PETER J. GUTOWSKI

Sworn to before me this
23rd day of June, 2008.

      Notary Public

Lisa M. Morales
Notary Public, State of New York
No. 01MO6162004
Qualified in the Bronx
Commission Expires Feb. 26, 2011

| | RECOMMENDED |
|---|---|
| **1.**Shipbroker<br>UB SHIPPING CO.,LTD SEOUL, KOREA | THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for traders  for which no specially approved form is in<br>CODE NAME: "GENCON", Part 1 |

| 3. Owners/Place of business (Cl. 1)<br>**MUR Shipping Bv Amsterdam** | **2. Place and date**<br>**Seoul, korea 27**[th] **Feb 2008-03-09** |
|---|---|
| | 4. Charterers/Place of business (Cl. 1)<br>**CHORUS SHIPPING CO.,LTD SEOUL, KOREA** |

| 5. Vessel's name (Cl. 1)<br>**MV.SEA BREEZE** | 6. GRT/NRT (Cl. 1)<br><br>**SEE CL.20** |
|---|---|

| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br>**SEE CL.20** | 8. Present position (Cl. 1)<br><br>**TRADING** |
|---|---|
| 9. Expected ready to load (abt.) (Cl. 1)<br>**00.01HRS 14**[TH] **MAR 2008** | |

| 10. Loading port or place (Cl.1)<br>**SHANGHAI, CHINA GSPSBAAAA** | 11. Discharging port or place (Cl. 1)<br>**LUANDA, ANGOLA GSPSBAAAA** |
|---|---|

| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo" (Cl. 1)<br>**SEE CL.34** |
|---|

| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br>**USD2.025 MILL L/SUM FIO L/S/D WITH FREE D/A BENDS** | 14.Freight payment (state currency and method of payment; also beneficiary and<br>bank account) (Cl. 4)<br>**SEE CL.25** |
|---|---|

| 15. State if vessel's cargo handling gear shall not be used (Cl. 5)<br>**NIL** | 16. Laytime (if separate laytime for load. and disch. is agreed<br>, fill in a) and b). If total laytime for load. And disch., fill in c) only) (Cl. 6) |
|---|---|
| 17. Shippers/Place of business (Cl. 6)<br>**NIL** | (a)Laytime for loadin |
| 18. Agents (loading) (Cl. 6)<br>**TBN** | (b) Laytime for discharging |
| 19. Agents (discharging) (Cl.6)<br>**TBN** | (c) Total laytime for loading and discharging<br>ALL PPS 20 WWDAYS SHINC |
| 20. Demmurage rate and manner payable (loading and discharging) (Cl. 7)<br>**USD20,500 PDPR/FREE DESPATCH** | 21. Cancelling date (Cl. 9)<br>**2400HRS 24**[TH] **MAR 2007** |
| | 22. General Average to be adjusted at (Cl. 12) |

| 23. Freight Tax (state if for Owners' account (Cl. 13 (c)) | 24 Brokerage commission and to whom payable (Cl. 15)<br>**2.50ADD COMM TO CHTRS AND 1.25PCT EACH** |
|---|---|
| 25. Law and Arbitration (state 19(a), 19(b) or 19(c) of Cl. 19; if 19(c) agreed also<br>state Place of Arbitration) (if not filled in 19(a) shall apply) (Cl. 19) | **TO UB SHIPPING & SUNLORD HKG** |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19) | 26. Additional clauses covering special provisions, if agreed<br>**20-37** |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I  as well as Part II.
In  the event of a conflict of conditions,  the provisions of  Part I  shall  prevail  over those of  Part II  to  the extent of such conflict.

| Signature (Owners) | Signature (Carterers) |
|---|---|
| | |



**EXHIBIT**

tabbies'

# ADDENDUM NO.1
# MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

# AGREEMENT

DATE : 7TH MAR 2008

THIS IS THE DAY MUTUALLY AGREED TO AMEND BETWEEN OWNERS
AND CHARTERERS ON THE FOLLOWING TERMS AND CONDITIONS:-

1.  Charterers have the option to change the loading/discharging port
with following terms and conditions:-

-FRT USD2.25 MILLION BSS 2/2 WITH FREE D/A
-PORT ROTATION TO BE YOKOHAMA/SHANGHAI AND THEN LUANDA/SOYO.
-TIME TO COMMENCE COUNTING IMMEDIATELY ON VESSEL TENDERING
  NOR AT 2ND LOAD/DISPORT
-L/can 12th /24th MARCH 2008 AS BSS 2/2 SCENARIO

END

The Owners                          Charterers

================================    ==============================
MUR Shipping Bv Amsterdam           Chorus Shipping Co.,Ltd , seoul, korea

# PART II
## "Gencon" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel 1
named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number 2
of metric tons of deadweight capacity all told on summer loadline stated in Box 3
7, now in position as stated in Box 8 and expected ready to load under this 4
Charter Party about the date indicated in Box 9, and the party mentioned as the 5
Charterers in Box 4 that: 6

The said Vessel shall, as soon as her prior commitments have been completed, 7
proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as 8
she may safely get and lie always afloat, and there load a full and complete 9
cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and 10
responsibility) as stated in Box 12, which the Charterers bind themselves to 11
ship, and being so loaded the Vessel shall proceed to the discharging port(s) or 12
place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near 13
thereto as she may safely get and lie always afloat, and there deliver the cargo. 14

### 2. Owners' Responsibility Clause 15

The Owners are to be responsible for loss of or damage to the goods or for 16
delay in delivery of the goods only in case the loss, damage or delay has been 17
caused by personal want of due diligence on the part of the Owners or their 18
Manager to make the Vessel in all respects seaworthy and to secure that she is 19
properly manned, equipped and supplied, or by the personal act or default of 20
the Owners or their Manager. 21

And the Owners are not to be responsible for loss, damage or delay arising from any 22
other cause whatsoever, even from the neglect or default of the Master or crew 23
or some other person employed by the Owners on board or ashore for whose 24
acts they would, but for this Clause, be responsible, or from unseaworthiness of 25
the Vessel on loading or commencement of the voyage or at any time 26
whatsoever. 27

### 3. Deviation Clause 28

The Vessel has liberty to call at any port or ports in any order, for any purpose, 29
to sail without pilots, to tow and/or assist Vessels in all situations, and also to 30
deviate for the purpose of saving life and/or property. 31

### 4. Payment of Freight 32

(a) The freight at the rate stated in Box13 shall be paid in cash calculated on the 33
intaken quantity of cargo. 34

(b) Prepaid. If according to Box13 freight is to be paid on shipment, it shall be 35
deemed earned and non-returnable. Vessel and/or cargo lost or not lost. 36
Neither the Owners nor their agents shall be required to sign or endorse bills of 37
lading showing freight prepaid unless the freight due to the Owners has 38
actually been paid. 39

(c) On delivery. If according to Box13 freight, or part thereof, is payable at 40
destination it shall not be deemed earned until the cargo is thus delivered. 41
Notwithstanding the provisions under(a), if freight or part thereof is payable on 42
delivery of the cargo the Charterers shall have the option of paying the freight 43
on delivered weight / quantity provided such option is declared before breaking 44
bulk and the weight /quantity can be ascertained by official weighing machine, 45
joint draft survey or tally. 46

Cash for Vessel's ordinary disbursements at the port of loading to be advanced 47
by the Charterers, if required, at highest current rate of exchange, subject to 48
two (2) per cent to cover insurance and other expenses. 49

### 5. Loading/Discharging 50

(a) Costs/Risks 51

The cargo shall be brought into the holds, loaded, stowed and/or trimmed, 52
talled, lashed and/or secured and taken from the holds and discharged by the 53
Charterers, free of any risk, liability and expense whatsoever to the Owners. 54
The Charterers shall provide and lay all dunnage material as required for the 55
proper stowage and protection of the cargo on board, the Owners allowing the 56
use of all dunnage available on board. The Charterers shall be responsible for 57
and pay the cost of removing their dunnage after discharge of the cargo under 58
this Charter Party and time to count until dunnage has been removed. See cl 28.59

b) Cargo Handling Gear 60

Unless the Vessel is gearless or unless it has been agreed between the parties 61
that the Vessel's gear shall not be used and stated as such in Box 15, the 62
Owners shall throughout the duration of loading/discharging give free use of 63
the Vessel's cargo handling gear and of sufficient motive power to operate all 64
such cargo handling gear. All such equipment to be in good working order. 65
Unless caused by negligence of the stevedores, time lost by breakdown of the 66
Vessel's cargo handling gear or motive power - pro rata the total number of 67
cranes / winches required at that time for the loading / discharging of cargo 68
under this Charter Party - shall not count as laytime or time on demurrage. 69

On request the Owners shall provide free of charge cranemen/winchmen from 70
the crew to operate the Vessel's cargo handling gear, unless local regulations 71
prohibit this, in which latter event shore labourers shall be for the account of the 72
Charterers. Cranemen / winchmen shall be under the Charterers' risk and 73
responsibility and as stevedores to be deemed as their servants but shall 74
always work under the supervision of the Master. 75

(c) Stevedore Damage 76

The Charterers shall be responsible for damage (beyond ordinary wear and 77
tear) to any part of the Vessel caused by Stevedores. Such damage shall be 78
notified as soon as reasonably possible by the Master to the Charterers or their 79
agents and to their Stevedores, failing which the Charterers shall not be held 80
responsible. The Master shall endeavour to obtain the Stevedores' written 81
acknowledgement of liability. 82

The Charterers are obliged to repair any stevedore damage prior to completion 83
of the voyage, but must repair stevedore damage affecting the Vessel's 84
seaworthiness or class before the Vessel sails from the port where such 85
damage was caused or found. All additional expenses incurred shall be for the 86
account of the Charterers and any time lost shall be for the account of and shall 87
be paid to the Owners by the Charterers at the demurrage rate. 88

### 6. Laytime 89

* (a) Separate laytime for loading and discharging 90

The cargo shall be loaded within the number of running days/hours as 91
indicated in Box 16, weather permitting, Sundays and holidays excepted, 92
unless used, in which event time used shall count. 93

The cargo shall be discharged within the number of running days/hours as 94
indicated in Box 16, weather permitting, Sundays and holidays excepted, 95
unless used, in which event time used shall count. 96

* b) Total laytime for loading and discharging 97

The cargo shall be loaded and discharged within the number of total running 98
days/hours as indicated in Box 16, weather permitting, Sundays and holidays 99
excepted, unless used, in which event time used shall count. 100

* c) Commencement of laytime (loading and discharging) 101

Laytime for loading and discharging shall commence at i3.00 hours, if notice of 102
readiness is given up to and including 12.00 hours, and at 06.00 hours next 103
working day if notice given during office hours after 12.00 hours. Notice of 104

readiness at loading port to be given to the Shippers named in Box 17 or if not 105
named, to the Charterers or their agents named in Box 18. Notice of readiness 106
at the discharging port to be given to the Receivers or, if not known, to the 107
Charterers or their agents named in Box 19. 108

If the loading / discharging berth is not available on the Vessel's arrival at or off 109
the port of loading / discharging, the Vessel shall be entitled to give notice of 110
readiness within ordinary office hours on arrival there, whether in free pratique 111
or not, whether customs cleared or not. Laytime or time on demurrage shall 112
then count as if she were in berth and in all respects ready for loading / 113
discharging provided that the Master warrants that she is in fact ready in all 114
respects. Time used in moving from the place of waiting to the loading/ 115
discharging berth shall not count as laytime. 116

If, after inspection, the Vessel is found not to be ready in all respects to load/ 117
discharge time lost after the discovery thereof until the Vessel is again ready to 118
load/discharge shall not count as laytime. 119

Time used before commencement of laytime shall count. 120

* Indicate alternative (a) or (b) as agreed, in Box 16. 121

### 7. Demurrage 122

Demurrage at the loading and discharging port is payable by the Charterers at 123
the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for 124
any part of a day. Demurrage shall fall due day by day and shall be payable 125
upon receipt of the Owners' invoice. 126

In the event the demurrage is not paid in accordance with the above, the 127
Owners shall give the Charterers 96 running hours written notice to rectify the 128
failure. If the demurrage is not paid at the expiration of this time limit and if the 129
vessel is in or at the loading port, the Owners are entitled at any time to 130
terminate the Charter Party and claim damages for any losses caused thereby. 131

### 8. Lien Clause 132

The Owners shall have a lien on the cargo and on all sub-freights payable in 133
respect of the cargo, for freight, deadfreight, demurrage, claims for damages 134
and for all other amounts due under this Charter Party including costs of 135
recovering same. 136

### 9. Cancelling Clause 137

(a) Should the Vessel not be ready to load (whether in berth or not) on the 138
cancelling date indicated in Box 21, the Charterers shall have the option of 139
cancelling this Charter Party. 140

(b) Should the Owners anticipate that, despite the exercise of due diligence, 141
the Vessel will not be ready to load by the cancelling date, they shall notify the 142
Charterers thereof without delay stating the expected date of the Vessel's 143
readiness to load and asking whether the Charterers will exercise their option 144
of cancelling the Charter Party, or agree to a new cancelling date. 145

Such option must be declared by the Charterers within 24 running hours after 146
the receipt of the Owners' notice. If the Charterers do not exercise their option 147
of cancelling, then this Charter Party shall be deemed to be amended such that 148
the seventh day after the new readiness date stated in the Owners' notification 149
to the Charterers shall be the new cancelling date. 150

The provisions of sub-clause (b) of this Clause shall operate only once, and in 151
case of the Vessel's further delay, the Charterers shall have the option of 152
cancelling the Charter Party as per sub-clause (a) of this Clause. 153

### 10. Bills of Lading 154

Bills of Lading shall be presented and signed by the Master as per the 155
"Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter 156
Party, or by the Owners' agents provided written authority has been given by 157
Owners to the agents, a copy of which is to be furnished to the Charterers. The 158
Charterers shall indemnify the Owners against all consequences or liabilities 159
that may arise from the signing of bills of lading as presented to the extent that 160
the terms or contents of such bills of lading impose or result in the imposition of 161
more onerous liabilities upon the Owners than those assumed by the Owners 162
under this Charter Party. 163

### 11. Both-to-Blame Collision Clause 164

If the Vessel comes into collision with another vessel as a result of the 165
negligence of the other vessel and any act, neglect or default of the Master, 166
Mariner, Pilot or the servants of the Owners in the navigation or in the 167
management of the Vessel, the owners of the cargo carried hereunder will 168
indemnify the Owners against all loss or liability to the other or non-carrying 169
vessel or her owners in so far as such loss or liability represents loss of, or 170
damage to, or any claim whatsoever of the owners of said cargo, paid or 171
payable by the other or non-carrying vessel or her owners to the owners of said 172
cargo and set - off, recouped or recovered by the other or non-carrying vessel 173
or her owners as part of their claim against the carrying Vessel or the Owners. 174

The foregoing provisions shall also apply where the owners, operators or those 175
in charge of any vessel or vessels or objects other than, or in addition to, the 176
colliding vessels or objects are at fault in respect of a collision or contact. 177

### 12. General Average and New Jason Clause 178

General Average shall be adjusted in London unless otherwise agreed in Box 179
22 according to York - Antwerp Rules 1994 and any subsequent modification 180
thereof. Proprietors of cargo to pay the cargo's share in the general expenses 181
even if same have been necessitated through neglect or default of the Owners' 182
servants (see Clause 2). 183

If General Average is to be adjusted in accordance with the law and practice of 184
the United States of America, the following Clause shall apply: "In the event of 185
accident, danger, damage or disaster before or after the commencement of the 186
voyage, resulting from any cause whatsoever, whether due to negligence or not 187
for, for which, or for the consequence of which, the Owners are not 188
responsible, by statute, contract or otherwise, the cargo shippers, consignees 189
or the owners of the cargo shall contribute with the Owners in General Average 190
to the payment of any sacrifices, losses or expenses of a General Average 191
nature that may be made or incurred and shall pay salvage and special charges 192
incurred in respect of the cargo. If a salving vessel is owned or operated by the 193
Owners,salvage shall be paid for as fully as if the said salving vessel or vessels 194
belonged to strangers. Such deposit as the Owners, or their agents, may deem 195
sufficient to cover the estimated contribution of the goods and any salvage and 196
special charges thereon shall, if required, be made by the cargo, shippers, 197
consignees or owners of the goods to the Owners before delivery". 198

### 13. Taxes and Dues 199

(a) On Vessel - The Owners shall pay all dues, charges and taxes customarily 200
levied on the Vessel, howsoever the amount thereof may be assessed. 201

(b) On cargo - The Charterers shall pay all dues, charges, duties and taxes 202
customarily levied on the cargo, howsoever the amount thereof may be 203
assessed. 204

(c) On freight - Unless otherwise agreed in Box 23, taxes levied on the freight 205
shall be paid for the Charterers' account. 206

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

**14. Agency**      207

In every case the Owners shall appoint their own Agent both at the port of 208
loading and the port of discharge. 209

**15. Brokerage**      210

A brokerage commission at the rate stated in Box 24 on the freight,dead-freight 211
and demurrage earned is due to the party mentioned in Box 24. 212

In case of non – execution 1/3 of the brokerage on the estimated amount of 213
freight to be paid by the party responsible for such non-execution to the 214
Brokers as indemnity for the latter's expenses and work. In case of more 215
voyages the amount of indemnity to be agreed. 216

**16. General Strike Clause**      217

(a) If there is a strike or lock-out affecting or preventing the actual loading of 218
cargo,or any part of it,when the Vessel is ready to proceed from her last port or 219
at any time during the voyage to the port or ports of loading or after her arrival 220
there, the Master or the Owners may ask the Charterers to declare, that they 221
agree to reckon the laydays as if there were no strike or lock-out. Unless the 222
Charterers have given such declaration in writing (by telegram, if necessary) 223
within 24 hours, the Owners shall have the option of cancelling this Charter 224
Party. If part cargo has already been loaded, the Owners must proceed with 225
same, (freight payable on loaded quantity only) having liberty to complete with 226
other cargo on the way for their own account. 227

(b) If there is a strike or lock-out affecting or preventing the actual discharge 228
of the cargo on or after the Vessel's arrival at or off port of discharge and same 229
has not been settled within 48 hours, the Charterers shall have the option of 230
keeping the Vessel waiting until such strike or lock-out is at an end against 231
paying half detention demurrage after expiration of the time provided for 232
discharging
until the strike or lock-out terminates and thereafter full demurrage shall be 233
payable until the completion of discharging, or of ordering the Vessel to a safe 234
port where she can safely discharge without risk of being detained by strike or 235
lock-out. Such orders to be given within 48 hours after the Master or the 236
Owners have given notice to the Charterers of the strike or lock-out affecting 237
The discharge. On delivery of the cargo at such port, all conditions of this 238
Charter Party and of the Bill of Lading shall apply and the Vessel shall receive 239
the same freight as if she had discharged at the original port of destination, 240
except that if the distance to the substituted port exceeds 200 nautical miles, 241
the freight on the cargo delivered at the substituted port to be increased in 242
proportion. 243

(c) Except for the obligations described above, neither the Charterers nor the 244
Owners shall be responsible for the consequences of any strikes or lock-outs 245
preventing or affecting the actual loading or discharging of the cargo. 246

**17. War Risks** See Cl 29.("Voywar 1993")*      247

~~(1) For the purpose of this Clause, the words:-~~ 248

~~(a) The "Owners" shall include -the -shipowners, bareboat -charterers,~~ 249
~~disponent owners, managers or other operators who are charged with the~~ 250
~~management of the Vessel, and the Master; and~~ 251

~~(b) "War Risks" shall include any war (whether actual or threatened), act of~~ 252
~~war, civil war, hostilities, revolution, rebellion, civil commotion, warlike~~ 253
~~operations, the laying of mines (whether actual or reported), acts of piracy,~~ 254
~~acts of terrorists, acts of hostility or malicious damage, blockades~~ 255
~~(whether imposed against all Vessels or imposed selectively against~~ 256
~~Vessels of certain flags or ownership, or against certain cargoes or crews~~ 257
~~or otherwise howsoever), by any person, body, terrorist or political group,~~ 258
~~or the Government of any state whatsoever, which, in the reasonable~~ 259
~~judgement of the Master and / or the Owners, may be dangerous or are~~ 260
~~likely to be or to become dangerous to the Vessel, her cargo, crew or other~~ 261
~~persons on board the Vessel.~~ 262

~~(2) If, at any time before the Vessel commences loading, it appears that, in the~~ 263
~~reasonable judgement of the Master and / or the Owners, performance of~~ 264
~~the Contract of Carriage, or any part of it, may expose, or is likely to expose,~~ 265
~~the Vessel, her cargo, crew or other persons on board the Vessel to War~~ 266
~~Risks, the Owners may give notice to the Charterers cancelling this~~ 267
~~Contract of Carriage, or may refuse to perform such part of it as may~~ 268
~~expose, or may be likely to expose, the Vessel, her cargo, crew or other~~ 269
~~person on board the Vessel to War Risks; provided always that if this~~ 270
~~Contract of Carriage provides that loading or discharging is to take place~~ 271
~~within a range of ports, and at the port or ports nominated by the Charterers~~ 272
~~the Vessel, her cargo, crew, or other persons onboard the Vessel may be~~ 273
~~exposed, or may be likely to be exposed, to War Risks, the Owners shall~~ 274
~~first -require- the -Charterers -to -nominate -any -other -safe -port -which -lies~~ 275
~~within the range for loading or discharging, and may only cancel this~~ 276
~~Contract of Carriage if the Charterers shall not have nominated such safe~~ 277
~~port or ports within 48 hours of receipt of notice of such requirement.~~ 278

~~(3) The Owners shall not be required to continue to load cargo for any voyage,~~ 279
~~or to sign Bills of Lading for any port or place, or to proceed or continue on~~ 280
~~any voyage, or on any part thereof, or to proceed through any canal or~~ 281
~~waterway, or to proceed to or remain at any port or place whatsoever,~~ 282
~~where it appears, either after the loading of the cargo commences, or at~~ 283
~~any stage of the voyage thereafter before the discharge of the cargo is~~ 284
~~completed, that, in the reasonable judgement of the Master and / or the~~ 285
~~Owners, the Vessel, her cargo (or any part thereof), crew or other persons~~ 286
~~on board the Vessel (or any one or more of them) may be or are likely to be,~~ 287
~~exposed to War Risks. If it should so appear, the Owners may by notice~~ 288
~~request the Charterers to nominate a safe port for the discharge of the~~ 289
~~cargo or any part thereof, and if within 48 hours of the receipt of such~~ 290
~~notice, the Charterers shall not have nominated such a port, the Owners~~ 291
~~may discharge the cargo at any safe port of their choice (including the port~~ 292
~~of loading) in complete fulfilment of the Contract of Carriage. The Owners~~ 293
~~shall be entitled to recover from the Charterers the extra expenses of such~~ 294
~~discharge and, if the discharge takes place at any port other than the~~ 295
~~loading port, to receive the full freight as though the cargo had been~~ 296
~~carried to the discharging port and if the extra distance exceeds 100 miles,~~ 297
~~to additional freight which shall be the same percentage of the freight~~ 298
~~contracted for as the percentage which the extra distance represents to~~ 299
~~the distance of the normal and customary route, the Owners having a lien~~ 300
~~on the cargo for such expenses and freight.~~ 301

~~(4) If at any stage of the voyage after the loading of the cargo commences, it~~ 302
~~appears that, in the reasonable judgement of the Master and / or the~~ 303
~~Owners, the Vessel, her cargo, crew or other persons on board the Vessel~~ 304
~~may be, or are likely to be, exposed to War Risks on any part of the route~~ 305
~~(including any canal or waterway) which is normally and customarily used~~ 306
~~in a voyage of the nature contracted for, and there is another longer route~~ 307
~~to the discharging port, the Owners shall give notice to the Charterers that~~ 308
~~this route will be taken. In this event the Owners shall be entitled, if the total~~ 309
~~extra distance exceeds 100 miles, to additional freight which shall be the~~ 310
~~same percentage of the freight contracted for as the percentage which the~~ 311
~~extra distance represents to the distance of the normal and customary~~ 312
~~route.~~ 313

~~(5)The Vessel shall have liberty:-~~ 314

~~(a) to comply with all orders, directions, recommendations or advice as to~~ 315
~~departure, arrival, routes, sailing in convoy, ports of call, stoppages,~~ 316
~~destinations, discharge of cargo, delivery or in any way whatsoever which~~ 317
~~are given by the Government of the Nation under whose flag the Vessel~~ 318
~~sails, or other Government to whose laws the Owners are subject, or any~~ 319
~~other Government which so requires, or any body or group acting with the~~ 320
~~power to compel compliance with their orders or directions;~~ 321

~~(b) to comply with the orders, directions or recommendations of any war~~ 322
~~risks -underwriters who have the authority to give the same under the terms~~ 323
~~of the war risk insurance;~~ 324

~~(c) to comply with the terms of any resolution of the Security Council of the~~ 325
~~United Nations, any directives of the European Community, the effective~~ 326
~~orders of any other Supranational body which has the right to issue and~~ 327
~~give the same, and with national laws aimed at enforcing the same to which~~ 328
~~the Owners are subject, and to obey the orders and directions of those who~~ 329
~~are charged with their enforcement;~~ 330

~~(d) to discharge at any other port any cargo or part thereof which may~~ 331
~~render the Vessel liable to confiscation as a contraband carrier;~~ 332

~~(e) to call at any other port to change the crew or any part thereof or other~~ 333
~~persons on board the Vessel when there is reason to believe that they may~~ 334
~~be subject to internment, imprisonment or other sanctions;~~ 335

~~(f) where cargo has not been loaded or has been discharged by the~~ 336
~~Owners under any provisions of this Clause, to load other cargo for the~~ 337
~~Owners' own benefit and carry it to any other port or ports whatsoever,~~ 338
~~whether backwards or forwards or in a contrary direction to the ordinary or~~ 339
~~customary route.~~ 340

~~(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this~~ 341
~~Clause anything is done or not done, such shall not be deemed to be a~~ 342
~~deviation, but shall be considered as due fulfilment of the Contract of~~ 343
~~Carriage.~~ 344

**18. General Ice Clause**      345

Port of loading 346

(a)In the event of the loading port being inaccessible by reason of ice when the 347
Vessel is ready to proceed from her last port or at any time during the voyage or 348
on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the 349
Master for fear of being frozen in is at liberty to leave without cargo, and this 350
Charter Party shall be null and void. 351

(b) If during loading the Master, for fear of the Vessel being frozen in, deems it 352
advisable to leave, he has liberty to do so with what cargo he has on board and 353
to proceed to any other port or ports with option of completing cargo for the 354
Owners' benefit for any other port or ports including port of discharge. Any part 355
cargo thus loaded under this Charter Party to be forwarded to destination at the 356
Vessel's expense but against payment of freight, provided that no extra 357
expenses be thereby caused to the Charterers, freight being paid on quantity 358
delivered (in proportion if lumpsum), all other conditions as per this Charter 359
Party. 360

(c) In case of more than one loading port, and if one or more of the ports are 361
closed by ice, the Master or the Owners to be at liberty either to load the part 362
cargo at the open port and fill up elsewhere for their own account as under 363
section (b) or to declare the Charter Party null and void unless the Charterers 364
agree to load full cargo at the open port. 365

Port of discharge 366

(a) Should ice prevent the Vessel from reaching port of discharge the 367
Charterers shall have the option of keeping the Vessel waiting until the re- 368
opening of navigation and paying demurrage or of ordering the Vessel to a safe 369
and immediately accessible port where she can safely discharge without risk of 370
detention by ice.Such orders to be given within 48 hours after the Master or the 371
Owners have given notice to the Charterers of the impossibility of reaching port 372
of destination. 373

(b)If during discharging the Master for fear of the Vessel being frozen in deems it 374
advisable to leave, he has liberty to do so with what cargo he has on board and 375
to proceed to the nearest accessible port where she can safely discharge. 376

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall 377
apply and the Vessel shall receive the same freight as if she had discharged at 378
the original port of destination, except that if the distance of the substituted port 379
exceeds 100 nautical miles, the freight on the cargo delivered at the substituted 380
port to be increased in proportion. 381

**19. Law and Arbitration**      382

* (a) This Charter Party shall be governed by and construed in accordance with 383
English law and any dispute arising out of this Charter Party shall be referred to 384
arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or 385
any statutory modification or re-enactment thereof for the time being in force. 386
Unless the parties agree upon a sole arbitrator, one arbitrator shall be 387
appointed by each party and the arbitrators so appointed shall appoint a third 388
arbitrator, the decision of the three-man tribunal thus constituted or any two of 389
them, shall be final. On the receipt by one party of the nomination in writing of 390
the other party's arbitrator, that party shall appoint their arbitrator within 391
fourteen days, failing which the decision of the single arbitrator appointed shall 392
be final. 393

For disputes where the total amount claimed by either party does not exceed 394
the amount stated in Box 25** the arbitration shall be conducted in accordance 395
with the Small Claims Procedure of the London Maritime Arbitrators 396
Association. 397

* (b) This Charter Party shall be governed by and construed in accordance with 398
Titles of the United States Code and the Maritime Law of the United States and 399
should any dispute arise out of this Charter Party, the matter in dispute shall be 400
referred to three persons at New York, one to be appointed by each of the 401
parties hereto, and the third by the two so chosen; their decision or that of any 402
two of them shall be final, and for purpose of enforcing any award, this 403
agreement may be made a rule of the Court. The proceedings shall be 404
conducted in accordance with the rules of the Society of Maritime Arbitrators, 405
Inc.. 406

For disputes where the total amount claimed by either party does not exceed 407
the amount stated in Box 25** the arbitration shall be conducted in accordance 408
with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, 409
Inc.. 410

* (c) Any dispute arising out of this Charter Party shall be referred to arbitration at 411
the place indicated in Box 25, subject to the procedures applicable there. The 412
laws of the place indicated in Box 25 shall govern this Charter Party. 413

(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply. 414

* (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25. 415

** Where no figure is supplied in Box 25 in Part I, this provision only shall be void but 416
the other provisions of this Clause shall have full force and remain in effect. 417

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS CHARTER PARTY DATED 27TH FEB 2008

**Clause 20. DESCRIPTION**

MV.SEA BREEZE

==

Mu1tipurpose, Monsun Type hull N 243, General cargo Vessel

Slovak Republic Flag

Built June 1983 Veb Warnowwerft Warnemunde Yard .

Tweendecker class Russian Maritime Register of Shipping, KM L3

+ Cargo ship deep sea Heavy Cargo Ic III RMS-V AUT-0S.


Dimensions:

LOA - 158.26 m

LBP   146.00 m

moulded breadth - 23.05 m,

depth to maindeck - 13.40 m

depth t? tweendeck - 9.20 m

freeboard draft - 10.18m

Various:


DWT   17350 ts

Middle Draft 10.18 m on ssw


Hold capacity: Grane/Bale 25,809 / 23,686 cbm


GRT/NRT: 13,521 / 7,621

Suez GRT/NRT: 14,118.76 / 11,584.40

Panama GRT/NRT: 14,281.94 / 11,041.80


Container capacity:

90 TEUs in holds.

Deck strength:

forecastle 1.75 ts/sqm hold 2/4

maindeck 3.80 ts/sqm hold 1

tweendeck 2.80 ts/sqm tween 1

tweendeck 4.00 ts/sqm tween 2/4

tanktop     9.00 ts/sqm hold 1

EXHIBIT

tabbies®

13

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

tanktop    11.00 ts/sqm hold 2/4

| Stackweight per | TEU stack | FEU steck |
|---|---|---|
| bridge deck N 1 | 20 ts | |
| bridge deck N 2 | 10 ts | |
| forecastle deck | 40 ts | |
| N 1 hatchcovers | 20 ts | 30 ts |
| maindeck hold 1 | 40 ts | 60 ts |
| maindeck 2/4 | 43 ts | 65 ts |
| tweendeck | 40 ts | 60 ts |
| tanktop N  I | 60 ts | 90 ts |
| tanktop 2/4 | 100 ts | 150 ts |

Gears:

4 x 35 ts heavy cargo derricks rigged according to the double topping lift

system with max. outreach over the ship' s side 6 m.

1 derrick each serve only 1 one hatch.

1 x 90 ts heavy cargo derrick serve 2/3 hatches with max. outreach over the

ship' s side 7.20 m.

Holds/hatches:

4 holds/7 weather/tween hatches hydraulically operated folding type hatch

covers

7 tweendeck hatches flush.

| Hatch 1 forecastle 18.60 x 13.00 maindeck 18.60 x 10,40 tween 18.55 x 10.40 | | |
|---|---|---|
| Hatch 2 starb/port | 2 x 19.20 x 7.80 | 2 x 19.20 x 7.80 |
| Hatch 3 starb/port | 2 x 19.20 x 7.80 | 2 x 19.20 x 7,80 |
| Hatch 4 starb/port | 2 x 19.20 x 7.80 | 2 x 19.20 x 7.80 |

| Hold dimensions | n 4 | n 3 | n2 | n 1 |
|---|---|---|---|---|
| Upper tween  length 24.60 Beam (mean) 20.00 Height 3.90 | | | | |
| Tweendeck length | 25.20 | 25.70 | 26.00 | 24.60 |
| Beam (mean) | 10.20/10.20 | 10.20/10.20 | 10.20/10.20 | 15.00 |
| Height | 4.20 | 4.20 | 4.20 | 4.20 |
| Lower holds length | 21.60 | 22.20 | 23.80 | 21.20 |

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

| Beam (mean) | 15.00 | 19.00 | 17.40 | 10.30 |
|---|---|---|---|---|
| Heigth | 7.62 | 7.62 | 7.62 | 4.50 |

Cargo hold ventilation.

Hold n 1 mechanical exaustion and natural supply.

Hold n 2/4 mechanical air supply and natural exaustion. Airchanges basis

empty space. Tweendecks about 8 times/hour. Lower holds or above

tanktop 5 times/hour.

Tweendecks 2/4 with lower holds shut off 14 times per hour.

Engines:

Main engine K7Z 70/120 E manufacture VEB Dieselmotorenwerk Rostock (main

license) 6691 kw at 130 rpm actual now 5985 kw at 124 rpm.

Auxiliary machinery:

1 8 VD 26/20 AL-2 output 640 kw

1 8 VD 26/20 AL-2 output 640 kw

1 8 VD 26/20 AL-1 output 480 kw

1 4 VD 21/15 2 output 76 kw for emergency use only

$CO_2$ fitted in cargo holds and engine room.

Bunker capacity 980 ts ifo 180 cst , 230 ts mgo.

(Normally useable at 90 pct of capacity to avoid overpressure,

otherwise full use subject to Master's approval)

ALL DTLS ABT WOG

- Owners warrant that the ship is fully seaworthy, Fully insured, PNI

  club covered and fully classed highest Lloyds or equivalent with steel

  tanktop. ISM. SMC Code

## Clause 21.- ARB/GA

Arbitration/General Average in London, English law to apply / LMAA small claims

procedure for claims and/or counter claims under $50,000.

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

**Clause 22.**

**Owners/master/agents to notify charterers/shippers by cable/fax/telex**

**Of 5/3/2/1 day(s) notice of vessels ETA loading port, and to charterers/receivers by**

**Cable/fax/telex of every two(2) day(s) notice of vessel's ETA discharging port.**

**Clause 23. disputed - deleted**

**Clause 24. deleted**

**Clause 25. Freight payable**

Full freight less comm to be paid within 3 banking days after completion of loading prior

s/r bills marked "freight prepaid."

Freight Payable always BBB. FDEADVAOCLONL

Owrs bank details

CORRESPONDING BANK:

CHASE MANHATTAN BANK NEW YORK (SWIFT CHASUS33)

BENEFICIARY:

CHASE MANHATTAN BANK LONDON (SWIFT CHASGB2L)

IN FAVOUR OF:

FIRSTRAND BANK LIMITED, ACCOUNT NUMBER 22002810.

FOR FURTHER CREDIT OF: METALL UND ROHSTOFF SHIPPING HOLDINGS BV.

ACCOUNT NUMBER: 1801028001

**Clause 26. BIMCO ISPS/MTSA CLAUSE FOR VOYAGE CHARTER PARTIES 2005**

(a)(i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA.

(ii) Loss, damages, expense (excluding consequential loss, damages, expense ) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party, and any delay caused by such failure shall count as laytime or time on demurrage.

(c) Provided that the delay is not caused by the owners' failure to comply with their obligations uner the ISPS Code/MTSA, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter party, the Vessel shall be entitled to tender Notice of readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS/MTSA.

(ii)Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS/MTSA shall count as laytime or time on demurrage, unless such measures result soley from the negligence of the Owners, Master or crew or the previous trading of the vessel, the nationality of the Owners' managers.

(d) Notwithstanding anything to the contrary provided in this Charter party, any costs or expenses Whatsoever soley arising out of or related to security regulations or measures required by the port Facility or any relevant authority in accordance with the ISPS/MTSA including but not limited to, Security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for The Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, master or crew or the previous trading of the vessel, the nationality of the crew or the identity of the Owners' managers. All measures required by the Owners to comply with the ship

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS CHARTER PARTY DATED 27TH FEB 2008

Security plan shall be for the Owners' account.

(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

## Clause 27 – Deck Cargo + Stowage

Any deck cargo is carried at charterers risk, expense and responsibility for loss or damage howsoever caused Bills of lading to be claused 'shipped on deck at Charterers', receivers risk, expense, responsibility without liability on the part of the vessel or her owners for loss, damage, expense or delay howsoever caused even if due to carriers negligence.

Stowage on deck/under deck is subject to vessel's stability, trim and permissible weights, and always to the master's satisfaction and approval, which shall not be unreasonably be withheld.

Charterers stowage plan to be minimum 10days prior approval loading port.
Master needs to approve same.

## Clause 28 – Padeyes etc

Charterers have the liberty, to weld padeyes onto vessel's weather deck and holds at their time and their expense, subject Master's approval which not to be withheld unreasonably.

The vessel to be redelivered in the same clean condition as on delivery, removed and disposal of dunnage and/or special lashing and/or pad eyes and/or weldings etc and/or other material(s) to be arranged and paid by charterers, and time to count as laytime.

## Clause 29- War risks clause for the voyage chartering, 2004 (code name;VOYWAR2004)

(a) For the purpose of this Clause, the words:

(i) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii) "War Risks" shall include any actual, threatened or reported:

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

War; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

 (b) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

 (c)  The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(d)  If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(e) (i)  The Owners may effect war risks insurance in respect of the Hull and  Machinery of the Vessel and their other interests (including, but not limited  to, loss of earnings and detention, the crew and their Protection and  Indemnity Risks), and the premiums and/or calls therefor shall be for their  account.

(ii)  If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, or in order to fulfil the Owners' obligation under this Contract of Carriage, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners within 14 days after receipt of the Owners' invoice. If the Vessel discharges all of her cargo within an area subject to additional premiums as herein set forth, the Charterer shall reimburse the Owners for the actual additional premiums paid which may accrue from completion of discharge until the Vessel leaves such area or areas referred to above. The Owners shall leave the area as soon as possible after completion of discharge.

(f)  The Vessel shall have liberty:-

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

(i)  to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(ii)  to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii)  to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational  body which has the right to issue and give the same, and with  national laws aimed at enforcing the same to which the Owners are  subject, and to obey the orders and directions of those who are  charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v)  to call at any other port to change the crew or any part thereof or  other persons on board the Vessel when there is reason to believe  that they may be subject to internment, imprisonment or other  sanctions;

(vi)  where cargo has not been loaded or has been discharged by the  Owners under any provisions of this Clause, to load other cargo for  the Owners' own benefit and carry it to any other port or ports  whatsoever, whether backwards or forwards or in a contrary  direction to the ordinary or customary route.

(g)  If in compliance with any of the provisions of sub-clauses (b) to (f) of this  Clause anything is done or not done, such shall not be deemed to be a  deviation

### Clause 30 – Hamburg rules
Neither the charterers nor their agents shall permit the issue of the any bill of lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the owners or

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
## CHARTER PARTY DATED 27TH FEB 2008

on the charterers' behalf or on behalf of any sub-charterers) incorporating, where not compulsory applicable, the Hamburg Rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague/Visby Rules. The charterers shall indemnify the owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

### Clause 31 – Agency assistance
Charterers' agent to attend vessel for routine Owners' matters. Owners to pay applicable tariff rate but no agency fee except for extraordinary matters including crew changes, dry-docking, General Average. In such case, Owners to pay Charterers' agent the applicable agency fee or to appoint own agents.

Charterers' agent to be used at both ends and the details to be given upon clean fixed.

### Clause 32 – Tax clause
Any taxes and/or dues on the cargo and/or freight and/or hire (other than those levied in the country of the Owners' domicile or the vessel's flag state) are to be for the Charterers' account including Angolian government CMCA charges.

### Clause 33 – Bills of lading

The Charterers have an option to surrender the original B/L to owners' nominated agents and the owners deliver the cargoes to the Consignee whom is nominated by the charterers without presentation of original B/L at discharging port, for which the charterers give the L.O.I to the owners.
L.O.I to be in owners PNI club wording.

### Clause 34 – permitted cargoes and excluded cargoes

The Charterers have the right to carry any lawful cargo, including dangerous cargo in accordance with vessel's specification and class according to the regulations of the loading and discharging port. Dangerous cargo to be packed, labeled, loaded, stowed and discharged according to Imdg code or prevailing local regulations in force. Imdg class 7, except what is contained in medical-

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

seismic or similar equipment is always excepted.

Should special magazines, separations, fittings, sheeting, be required for transportation of dangerous and ordinary lawful cargo in excess of vessel's general fittings and equipment for carriage of dangerous cargo, to be arranged and paid for by the Charterers. Owners and crew to cooperate with time-charterers to find the most suitable solution to such eventual modifications – but always subject to the approval of the class – should the modification require approval from the class.

The following cargoes are excluded arms, ammunitions, detonators, turnings, shavings, sulphur, ammonium nitrate (except in bulker bags – IMO class 5.1 un number 1942 and fertilizer grade types. Subject loading stowage in accordance to imo regulations and in compliance with the vessel's d.o.c). all cargoes to be carried within imo regulations, including all the packaging and handling such as packed, labelled, handled, loaded, stowed, carried, discharged in accordance with international, local, imo regulations at Charterers risk and expense. Any extra special fittings material to be provided for and paid by Charterers. Any extra insurance, if any, to be for Charterers account.
However following cargoes always to remain excluded unuclear and/or radioactive wastes, Fuels, materials, goods, products, creosoted goods, naphta, ammunitions, explosives (except in containers and on deck only and subject loading stowage in accordance to IMO IMCO regulations and in compliance with the vessel's D.O.C), scrap, motorblocks, turnings, Shaving, bulk cement.

Intended cargoes consist of Mixed cargoes for Steel products/Stuctures/General cargoes incl Vehicles/Equipments and cement in ton bag upto vessels full capacity on/underdeck in charterers option.
Always within lawful and safe capabilities of vessel in master opinion.
Packing list to be sent on fixing main terms.

Stowage under/on deck always to be to the Master's satisfaction.

Any cargoes beyond charterers last packing list on fixing (dd 22nd feb 2008), charterers to seek owners approval prior loading.

# RIDER CLAUSE TO MV SEA BREEZE/CHORUS
# CHARTER PARTY DATED 27TH FEB 2008

**Clause 35 – Port restrictions**

Charterers to guarantee prevailing port/berth restrictions both ends.

**Clause 36 – OAP**

Overage premium charges, if any, to be for charterers account.

**Clause 37 – N.O.R**

NOR to be tendered ATDNSHINC - 12 Hrs turntime bends UU.
For sake good order, NOR tendered bends WIPON/WIBON/WIFPON/WICCON.

The Owners                          Charterers

================================    ==============================

MUR Shipping Bv Amsterdam           Chorus Shipping Co.,Ltd , seoul, korea

# TIME SHEET

| Vessel: | Sea Breeze | | | Loading port | SHANGHAI | | |
| Fixture No.: | FBV12693 | | | Cargo quantity | 1.0000 Lumpsum | | |
| Client: | Chorus Shipping Co. Ltd | | | Laytime No. | L11280 | | |

### Statement of facts

Terms of charter party dated 27. Feb 2008

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Vessel arrived anchorage | Sat | 29/03/08 | 7:25 | Reversible laytime | | | |
| Notice tendered | Sat | 29/03/08 | 7:25 | Working Time Saved | | | |
| Vessel left anchorage | Sat | 29/03/08 | 7:25 | | | | |
| Vessel berthed | Sat | 29/03/08 | 8:20 | Demurrage rate | | USD | 20,500.00 |
| Loading commenced | Sat | 29/03/08 | 8:30 | Despatch rate | | USD | 0.00 |
| Loading completed | Mon | 14/04/08 | 3:40 | Loading rate | | | 20 Days |
| **Laytime commenced** | **Sat** | **29/03/08** | **8:30** | Sundays and Holidays incl | | | |

| | | | | | | Time used | | Total time | |
|---|---|---|---|---|---|---|---|---|---|
| Day | Date | From | To | Remarks | % | HH:MM | | DD | HH:MM |
| Sat | 29/03/08 | 8:30 | 8:30 | Laytime Commenced | 0.00 | 0:00 | | 0 | 0:00 |
| Sat | 29/03/08 | 8:30 | 9:00 | Opening hatches | 0.00 | 0:00 | | 0 | 0:00 |
| Sat | 29/03/08 | 9:00 | 12:00 | Loading | 100.00 | 3:00 | | 0 | 3:00 |
| Sat | 29/03/08 | 12:00 | 13:00 | Meal break | 0.00 | 0:00 | | 0 | 3:00 |
| Sat | 29/03/08 | 13:00 | 14:00 | | 100.00 | 1:00 | | 0 | 4:00 |
| Sat | 29/03/08 | 14:00 | 15:30 | Crane Breakdown. | 0.00 | 0:00 | | 0 | 4:00 |
| Sat | 29/03/08 | 15:30 | 24:00 | | 100.00 | 8:30 | | 0 | 12:30 |
| Sun | 30/03/08 | 0:00 | 24:00 | | 100.00 | 24:00 | | 1 | 12:30 |
| Mon | 31/03/08 | 0:00 | 8:30 | | 100.00 | 8:30 | | 1 | 21:00 |
| Mon | 31/03/08 | 8:30 | 12:00 | Rain. | 0.00 | 0:00 | | 1 | 21:00 |
| Mon | 31/03/08 | 12:00 | 24:00 | | 100.00 | 12:00 | | 2 | 9:00 |
| Tue | 01/04/08 | 0:00 | 24:00 | | 100.00 | 24:00 | | 3 | 9:00 |
| Wed | 02/04/08 | 0:00 | 20:30 | | 100.00 | 20:30 | | 4 | 5:30 |
| Wed | 02/04/08 | 20:30 | 21:30 | Mcgregor problem. | 0.00 | 0:00 | | 4 | 5:30 |
| Wed | 02/04/08 | 21:30 | 24:00 | Completed loading in Yokohama. | 100.00 | 2:30 | | 4 | 8:00 |
| Thu | 03/04/08 | 0:00 | 14:00 | Completed loading in Yokohama. | 100.00 | 14:00 | | 4 | 22:00 |
| Thu | 03/04/08 | 14:00 | 24:00 | Sailing to Shanghai | 0.00 | 0:00 | | 4 | 22:00 |
| Fri | 04/04/08 | 0:00 | 24:00 | | 0.00 | 0:00 | | 4 | 22:00 |
| Sat | 05/04/08 | 0:00 | 24:00 | | 0.00 | 0:00 | | 4 | 22:00 |
| Sun | 06/04/08 | 0:00 | 24:00 | | 0.00 | 0:00 | | 4 | 22:00 |
| Mon | 07/04/08 | 0:00 | 0:45 | | 0.00 | 0:00 | | 4 | 22:00 |
| Mon | 07/04/08 | 0:45 | 13:00 | Notice time expires. | 0.00 | 0:00 | | 4 | 22:00 |
| Mon | 07/04/08 | 13:00 | 24:00 | | 100.00 | 11:00 | | 5 | 9:00 |
| Tue | 08/04/08 | 0:00 | 24:00 | | 100.00 | 24:00 | | 6 | 9:00 |
| Wed | 09/04/08 | 0:00 | 24:00 | | 100.00 | 24:00 | | 7 | 9:00 |
| Thu | 10/04/08 | 0:00 | 24:00 | | 100.00 | 24:00 | | 8 | 9:00 |
| Fri | 11/04/08 | 0:00 | 24:00 | | 100.00 | 24:00 | | 9 | 9:00 |
| Sat | 12/04/08 | 0:00 | 3:30 | Pilot on board proceeding to berth | 0.00 | 0:00 | | 9 | 9:00 |
| Sat | 12/04/08 | 3:30 | 8:40 | | 0.00 | 0:00 | | 9 | 9:00 |
| Sat | 12/04/08 | 8:40 | 24:00 | | 100.00 | 15:20 | | 10 | 0:20 |
| Sun | 13/04/08 | 0:00 | 24:00 | | 100.00 | 24:00 | | 11 | 0:20 |
| Mon | 14/04/08 | 0:00 | 3:40 | | 100.00 | 3:40 | | 11 | 4:00 |

| | | |
|---|---|---|
| Total time allowed | (20.0000 Days) | 20 day(s) 0 hour(s) 00 minute(s) |
| Time used this port | (11.1667 Days) | 11 day(s) 4 hour(s) 00 minute(s) |
| Time saved | (8.8333 Days) | 8 day(s) 20 hour(s) 00 minute(s) |

# TIME SHEET

| | | |
|---|---|---|
| **Vessel:** | Sea Breeze | |
| **Fixture No.:** | FBV12693 | |
| **Client:** | Chorus Shipping Co. Ltd | |

| | |
|---|---|
| **Discharging port** | LUANDA |
| **Cargo quantity** | 1.0000 Lumpsum |
| **Laytime No.** | L11280 |

### Statement of facts

Terms of charter party dated 27. Feb 2008

| | | | | |
|---|---|---|---|---|
| Vessel arrived anchorage | Tue | 20/05/08 | 14:45 | Reversible laytime |
| Notice tendered | Tue | 20/05/08 | 14:45 | Working Time Saved |
| Vessel left anchorage | Mon | 02/06/08 | 0:00 | |
| Vessel berthed | Mon | 02/06/08 | 0:00 | Demurrage rate |
| Discharging commenced | Mon | 02/06/08 | 6:00 | Despatch rate |
| Discharging completed | Wed | 25/06/08 | 2:00 | Discharging rate |
| **Laytime commenced** | **Wed** | **21/05/08** | **6:00** | Sundays and Holidays incl |

| | | |
|---|---|---|
| Demurrage rate | USD | 20,500.00 |
| Despatch rate | USD | 0.00 |
| Discharging rate | | 0 Days |

| Day | Date | From | To | Remarks | % | Time used HH:MM | Total time DD HH:MM |
|---|---|---|---|---|---|---|---|
| Wed | 21/05/08 | 6:00 | 24:00 | | 100.00 | 18:00 | 0  18:00 |
| Thu | 22/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 1  18:00 |
| Fri | 23/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 2  18:00 |
| Sat | 24/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 3  18:00 |
| Sun | 25/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 4  18:00 |
| Mon | 26/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 5  18:00 |
| Tue | 27/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 6  18:00 |
| Wed | 28/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 7  18:00 |
| Thu | 29/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 8  18:00 |
| Fri | 30/05/08 | 0:00 | 2:00 | Laytime expires | 100.00 | 2:00 | 8  20:00 |
| Fri | 30/05/08 | 2:00 | 24:00 | On demurrage | 100.00 | 22:00 | 9  18:00 |
| Sat | 31/05/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 10  18:00 |
| Sun | 01/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 11  18:00 |
| Mon | 02/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 12  18:00 |
| Tue | 03/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 13  18:00 |
| Wed | 04/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 14  18:00 |
| Thu | 05/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 15  18:00 |
| Fri | 06/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 16  18:00 |
| Sat | 07/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 17  18:00 |
| Sun | 08/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 18  18:00 |
| Mon | 09/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 19  18:00 |
| Tue | 10/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 20  18:00 |
| Wed | 11/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 21  18:00 |
| Thu | 12/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 22  18:00 |
| Fri | 13/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 23  18:00 |
| Sat | 14/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 24  18:00 |
| Sun | 15/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 25  18:00 |
| Mon | 16/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 26  18:00 |
| Tue | 17/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 27  18:00 |
| Wed | 18/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 28  18:00 |
| Thu | 19/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 29  18:00 |
| Fri | 20/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 30  18:00 |
| Sat | 21/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 31  18:00 |
| Sun | 22/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 32  18:00 |
| Mon | 23/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 33  18:00 |
| Tue | 24/06/08 | 0:00 | 24:00 | | 100.00 | 24:00 | 34  18:00 |
| Wed | 25/06/08 | 0:00 | 2:00 | | 100.00 | 2:00 | 34  20:00 |

| | | |
|---|---|---|
| Time saved 1. port | (8.8333 Days) | 8 day(s) 20 hour(s) 00 minute(s) |
| Time used this port | (34.8333 Days) | 34 day(s) 20 hour(s) 00 minute(s) |
| Time lost | (26.0000 Days) | 26 day(s) 0 hour(s) 00 minute(s) |

///////////////////////////////////////////////////////////////////////Total Results///////////////////////////////////////////////////////////////////////

| | |
|---|---|
| **Total time allowed** | 20.0000 days |
| Time used SHANGHAI | 11.1667 days |
| Time used LUANDA | 34.8333 days |
| **Time Lost** | **-26.0000 day** |

**Demurrage 26.0000 days at 20,500 per day. . . . . . . . . .**     **USD**     **533,000.00**